IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BRIAN HASTINGS,                        :

    Plaintiff,                        :

v.                                     :      Civil Action No. GLR-14-2244

OCWEN LOAN SERVICING, LLC,             :

    Defendant.                        :


## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Ocwen Loan Servicing, LLC's ("Ocwen") Motion to Dismiss Plaintiff Brian Hastings's ("Hastings") Amended Complaint (ECF No. 20). The issues here have been fully briefed and the Motion is ripe for disposition. No hearing is necessary. See Local Rule 105.6 (D.Md. 2014). For the reasons outlined below, the Motion will be granted in part and denied in part.

## I.   BACKGROUND[1]

In November 2007, Hastings refinanced the mortgage on his home, located at 2923 Goat Hill Road, Bel Air, Maryland (the "Property"), by a loan from IndyMac Bank, FSB (the "Note"). The Note was secured by a deed of trust.

On September 1, 2010, Hastings filed a Complaint in the Circuit Court of Maryland for Harford County against OneWest

---

[1] Unless otherwise stated, the following facts are alleged in the Amended Complaint.

Bank, FSB ("OneWest"), alleging OneWest breached an agreement to modify his mortgage loan; the action was removed to this Court on December 2, 2010.  See Hastings v. OneWest Bank, FSB, No. GLR-10-3375 (D.Md. filed Dec. 2, 2010).  On September 1, 2013, the servicing rights and obligations for Hastings's mortgage loan transferred from OneWest to Ocwen, and Ocwen accepted Hastings's offer to settle the prior lawsuit.  See id.  Prior to entering into the Settlement Agreement, the parties agreed that Hastings was current on the Note.  Thereafter, Hastings made regular timely payments of $1,400.05 per month to Ocwen, which included $972.93 in mortgage payments, $292.12 towards his escrow, and $135.00 to be applied to his principle balance.

Despite his compliance with the terms of the Settlement Agreement, Ocwen began to send Hastings letters claiming his payments were past due, his escrow account was short, and his hazard insurance had expired.  Ocwen informed Hastings that his account had been charged late fees and that it would proceed to foreclosure unless he paid the purported balance of the note, $274,534.76.  Further, Ocwen informed Hastings that his credit rating could be negatively affected if he failed to pay this amount in full.

On January 24, 2014, Hastings sent Ocwen a Qualified Written Request ("QWR") seeking a full accounting of his loan and requesting that Ocwen correct the errors on his account.

Ocwen acknowledged receipt of Hastings's QWR on February 11, 2014.   On February 13 and 14, 2014, Ocwen responded to Hastings's QWR by providing a loan history and information concerning a prior loan for which Hastings had not requested information.   Further, despite having renewed and updated his hazard insurance in March 2014, Ocwen sent Hastings a letter, dated May 17, 2014, informing him that it planned to purchase insurance for his property.

On May 23, 2014, Hastings filed a Complaint in the Circuit Court for Harford County, Maryland.   (ECF No. 2).   On July 14, 2014, Ocwen removed the case to this Court.   (ECF No. 1).   On August 4, 2014, Hastings filed an Amended Complaint, alleging violations of the Maryland Consumer Protection Act ("MCPA"), Md. Code. Ann., Com. Law §§ 13-101 et seq. (West 2014) and the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law § 14-201 (West 2014) (Count One); the Maryland Mortgage Fraud Protection Act ("MMFPA"), Md. Code Ann., Real Prop. § 7-401(d) (West 2014) (Count Two); and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e) (2012) (Count Four).   (ECF No. 16).   The Complaint also includes claims of negligence (Count Three), tortious interference with an economic relationship (Count Five), and breach of settlement agreement (Count Six).   Id.   On August 21, 2014, Ocwen filed its Motion to

Dismiss the Amended Complaint.   (ECF No. 20).   The Motion is ripe for disposition.

## II.  DISCUSSION

### A.  Standard of Review

A Federal Rule of Civil Procedure 12(b)(6) motion should be granted unless an adequately stated claim is "supported by showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 (2007); see Fed.R.Civ.P. 12(b)(6).   "[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Presley v. City of Charlottesville, 464 F.3d 480, 483 (4th Cir. 2006) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)) (internal quotation marks and alterations omitted).   "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Twombly, 550 U.S. at 555.   A complaint is also insufficient if it relies upon "naked assertion[s] devoid of further factual enhancement." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (alteration in the original) (quoting Twombly, 550 U.S. at 557) (internal quotation marks omitted).

To survive a Rule 12(b)(6) motion to dismiss, a complaint

must set forth "a claim for relief that is plausible on its face." Id.; Twombly, 550 U.S. at 547.   A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

In considering a Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).   "Conclusory allegations regarding the legal effect of the facts alleged," however, need not be accepted. Labram v. Havel, 43 F.3d 918, 921 (4th Cir. 1995) (citing United Mine Workers of Am., Inc. v. Wellmore Coal Corp., 609 F.2d 1083, 1085-86 (4th Cir. 1979).   Because the central purpose of the complaint is to provide the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests, the plaintiff's legal allegations must be supported by some factual basis sufficient to allow the defendant to prepare a fair response. Twombly, 550 U.S. at 555 n.3.

**B.   Analysis**

   1. **MCDCA and MCPA**

The Court will deny Ocwen's Motion to Dismiss with respect to Count I of the Amended Complaint.   The MCDCA provides that a

debt collector may not "claim, attempt, or threaten to enforce a right with knowledge that the right does not exist." Md. Code Ann., Com. Law § 14-202(8). To establish a prima facie case under the MCDCA, Hastings must set forth factual allegations tending to establish: (1) Ocwen did not possess the right to collect the amount of debt sought and (2) Ocwen attempted to collect the debt knowing it lacked the right to do so. See Pugh v. Corelogic Credco, LLC, No. DKC 13-1602, 2013 WL 5655705, at *4 (D.Md. Oct. 16, 2013).

Ocwen argues Hastings has not stated a claim under the MCDCA because he failed to allege Ocwen acted with knowledge that the debt was invalid. Further, Ocwen asserts it had the right to collect the debt because Hastings is indebted under the mortgage. Hastings alleges he made regular, timely payments on the Note, yet Ocwen sent him multiple notices stating he was delinquent on his mortgage payments, his escrow balance was $1,097.53 short, and his insurance had expired. The notices demanded payment not yet due under the Note, informed Hastings that his account had been charged late fees, and threatened him with foreclosure and a negative credit rating. Thus, the Court concludes Hastings has sufficiently alleged Ocwen attempted to collect a debt with knowledge that it had no right to do so.

Accordingly, the Court will deny Ocwen's Motion to Dismiss as to Count I.[2]

2. **MMFPA**

The Court will dismiss Count II of the Amended Complaint. The MMFPA prohibits mortgage fraud during the mortgage lending process. Md. Code. Ann., Real Prop. § 7-401(d) (West 2014). The "mortgage lending process" includes servicing the loan. Id. § 7-401(e)(2); Stovall v. SunTrust Morg., Inc., No. RDB-10-2836, 2011 WL 4402680, at *10 (D.Md. Sept. 20, 2011) (explaining that the MMFPA encompasses conduct in connection with a mortgage loan closing, as well as "post-closing servicing activities.").

The MMFPA is a fraud-based claim. In Maryland, to state a claim for fraudulent misrepresentation, a plaintiff must plead with particularity pursuant to Federal Rule of Civil Procedure 9(b):

> (1) that the defendant made a false representation to the plaintiff; (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference to its truth; (3) that the misrepresentation was made for the purpose of defrauding the plaintiff; (4) that the plaintiff relied on the misrepresentation and had the right to rely on it; and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

---

[2] Violations of the MCDCA are defined as "unfair or deceptive trade practices" under the MCPA. Md. Code Ann., Com. Law § 13-301(14)(iii) (West 2014). As such, MCDCA violations constitute per se violations of the MCPA. See Fontell v. Hassett, 870 F.Supp.2d 395, 411 (D.Md. 2012). Accordingly, the Court need not discuss Hastings's MCPA claim at this stage.

*Ayres v. Ocwen Loan Serv., LLC*, No. WDQ-13-1597, 2014 W.L. 4269051, at *8 (D.Md. Aug. 27, 2014) (emphasis added) (quoting *Ademiluyi v. PennyMac Morg. Inv. Holdings I, LLC*, 929 F.Supp.2d 502, 530 (D.Md. 2013)).

Ocwen argues Hastings failed to plead that he relied on Ocwen's alleged misrepresentations. Hastings alleges Ocwen intended him to rely on its letters, which threatened to foreclose on his home and stated Ocwen had charged late fees to his account. Hastings does not allege, however, that he made any payments in reliance on these threats and statements. Accordingly, the Court will grant the Motion to Dismiss as to Count II.

3. **Negligence**

The Court will dismiss Count III of the Amended Complaint. To state a claim for negligence, a plaintiff must show the defendant owed him a duty of care. See *Jacques v. First Nat. Bank of Md.*, 515 A.2d 756, 758 (Md. 1986) (citing *Ashburn v. Anne Arundel Cnty.*, 510 A.2d 1078, 1082 (Md. 1986)). A duty giving rise to a tort action must be "imposed by a source independent of that arising out of the contract itself." *Mesmer v. Md. Auto. Ins. Fund*, 725 A.2d 1053, 1059 (Md. 1999) (quoting *Bd. of Educ. of Charles Cnty. v. Plymouth Rubber Co.*, 569 A.2d 1288, 1298 (Md.Ct.Spec.App. 1990)). Where "the dispute is over

the existence of any valid contractual obligation covering a particular matter, or where the defendant has failed to recognize or undertake any contractual obligation whatsoever, the plaintiff is ordinarily limited to a breach of contract remedy." Id. at 1059.

Hastings alleges Ocwen owed him a duty of care in servicing his mortgage. The Amended Complaint, however, lacks sufficient facts to support the inference that Ocwen owed a duty of care independent of its duties under the Note. Accordingly, the Court will grant Ocwen's Motion to Dismiss with respect to Count III.

4. **RESPA**

The Court will deny Ocwen's Motion to Dismiss as to Count IV of the Amended Complaint. RESPA requires the servicer of a federally related mortgage loan to acknowledge receipt of a QWR within five business days of receipt.[3] 12 U.S.C. § 2605(e)(1)(A)(2012); 12 C.F.R. § 1024.35 (2014). Thereafter, within thirty business days, the servicer must (1) make corrections to the borrower's account; (2) after conducting an investigation, provide a written explanation stating the reasons the servicer believes the account is correct; or (3) conduct an

---

[3] Requesting "information related to loan servicing, including the receipt and amount of periodic payments, constitutes a QWR. See Minson v. CitiMortgage, Inc., No. DKC 12-2233, 2013 WL 2383658, at *5 (D.Md. May 29, 2013).

investigation and provide the information requested by the borrower or an explanation of why the information is unavailable. 12 U.S.C. § 2605(e)(2). In the event a servicer fails to comply with this requirement, RESPA authorizes a plaintiff to recover actual damages "as a result of" the servicer's failure. 12 U.S.C. § 2605(f).

Hastings alleges, and Ocwen does not deny, that Ocwen failed to timely acknowledge his QWR within five business days.[4] Further, Hastings alleges Ocwen's response did not address the loan for which he requested information. Finally, Hastings alleges Ocwen did not provide the information requested within the thirty-day time limit under RESPA. Thus, Hastings has sufficiently alleged Ocwen failed to conduct an investigation of the errors on his account or provide a sufficient response. See Powell v. Aegis Mortg. Corp., No. DKC 2006-1198, 2007 WL 98372, at *8 (D.Md. Jan. 11, 2007) (finding party sufficiently alleged loan servicer's response was not "adequate under RESPA" by demonstrating servicer failed to conduct adequate investigation). Accordingly, the Motion to Dismiss will be denied as to Count IV.

---

[4] Ocwen argues Hastings cites to the wrong benchmark by stating Ocwen's response was due five business days after he sent the QWR. This argument is without merit, however, because the Amended Complaint clearly states "within five days of receipt of the letter." (Am. Compl. ¶ 78).

5. **Tortious Interference with an Economic Relationship**

The Court will dismiss Count V of the Amended Complaint. To state a claim for tortious interference with an economic relationship, Hastings must allege: "(1) the existence of a contract between plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional interference with that contract; (4) a breach of that contract by the third party; and (5) resulting damages to the plaintiff." Suss v. JP Morgan Chase Bank, N.A., No. WMN-09-1627, 2009 WL 2923122, at *5 (D.Md. Sept. 10, 2009) (citing Sensormatic Sec. Corp. v. Sensormatic Elect. Corp., 455 F.Supp.2d 399, 426 (D.Md. 2006)).

Hastings alleges Ocwen intentionally attempted to interfere with the contract between himself and Fannie Mae, the owner of the Note, by misrepresenting to him that he owed additional sums on the loan. Hastings alleges Ocwen engaged in this practice without justification to induce him into defaulting on the Note so it could realize additional benefits through the assessment of fees, costs, and force placed insurance. Finally, Hastings alleges he suffered damages and harm to his reputation.

Hastings has not alleged, however, that he or Fannie Mae breached the contract as a result of Ocwen's alleged interference. Accordingly, the Court will dismiss Count V.

6. **Breach of Settlement Agreement**

The Court will deny Ocwen's Motion to Dismiss with respect to Count VI. To state a claim for breach of contract, a plaintiff "must allege facts showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation." Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc., 190 F.Supp.2d 785, 791 (D.Md. 2002) (citing Cont'l Masonry Co., Inc. v. Verdel Constr. Co., 369 A.2d 566, 569 (Md. 1977)); see also Barclay White Skanska, Inc. v. Battelle Mem'l Inst., 262 F.App'x 556, 561 (4th Cir. 2008) (quoting Taylor v. NationsBank, N.A., 776 A.2d 645, 651 (Md. 2001)).

Ocwen contends Hastings does not specify which clauses of the Settlement Agreement were violated or when the breaches occurred. Hastings clearly alleges, however, that breaches occurred each time Ocwen demanded sums in excess of the amounts owed under the Settlement Agreement. Further, Hastings alleges Ocwen supported these demands through threats to foreclose on his home, report him to credit bureaus, charge him late fees, and charge him for force-placed insurance. Accordingly, the Court will deny Ocwen's Motion to Dismiss as to Count VI.

### III. Conclusion

For the foregoing reasons, it is hereby ordered that Ocwen's Motion to Dismiss Hastings's Amended Complaint (ECF No.

20) is GRANTED in part and DENIED in part.   Ocwen's Motion to Dismiss is GRANTED as to Counts II and IV of the Amended Complaint and DENIED as to Counts I, III, V, and VI.  A separate Order will follow.

Entered this 16th day of December, 2014

_____/s/_____
George L. Russell, III
United States District Judge